**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| IMPLICIT, LLC, | Civil Action No. 2:19-cv-37-JRG-RSP |
| *Plaintiff,* | |
| v. | **JURY TRIAL DEMANDED** |
| JUNIPER NETWORKS, INC., | |
| *Defendant*. | |

**DEFENDANT JUNIPER NETWORKS, INC.'S MOTION TO**
**TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA**

# TABLE OF CONTENTS

**Page**

I.    FACTUAL BACKGROUND ........................................................................................1

    A.    The Parties' Background and Prior Connections to California ...........................1

    B.    Implicit's Lawsuit Against Juniper in the Northern District of California ..................................................................................................................2

    C.    Summary Judgment Proceedings Before Judge Illston ......................................4

    D.    Implicit's Later Lawsuits in California, Texas, and Delaware ...........................6

II.    LEGAL STANDARD ..............................................................................................7

III.    IMPLICIT COULD HAVE BROUGHT THIS ACTION IN THE NORTHERN DISTRICT OF CALIFORNIA ...............................................................7

IV.    ALL PRIVATE INTEREST FACTORS FAVOR TRANSFER .........................................7

    A.    Ease Of Access To Relevant Sources Of Proof .................................................7

    B.    Availability of Compulsory Process ..................................................................9

    C.    Cost of Attendance for Willing Witnesses.......................................................10

    D.    Other Practical Problems ..................................................................................11

V.    THE PUBLIC INTEREST FACTORS COLLECTIVELY FAVOR TRANSFER ...............................................................................................................14

    A.    Court Congestion ..............................................................................................14

    B.    Local Interest ....................................................................................................14

    C.    Familiarity with the Law and Avoidance of Conflicts of Law ..........................15

VI.    CONCLUSION....................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*,
    908 F.3d 1267 (Fed. Cir. 2018)................................................13

*Blue Spike, LLC v. Juniper Networks, Inc.*,
    6-17-cv-00016 (E.D. Tex. 2017)................................................2

*Chrimar Sys., Inc. v. Juniper Networks Inc.*,
    6-15-cv-00630 (E.D. Tex. 2015)................................................2

*In re Eli Lilly & Co.*,
    541 F. App'x 993 (Fed. Cir. 2013) ............................................12

*In re EMC Corp.*,
    501 F. App'x 973 (Fed. Cir. 2013) ............................................13

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014) ............................................11

*Hanby v. Shell Oil Co.*,
    144 F. Supp. 2d 673 (E.D. Tex. 2001)........................................7

*In re HP Inc.*,
    2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) ............................10

*Invitrogen Corp. v. Gen. Elec. Co.*,
    2009 WL 331891 (E.D. Tex. Feb. 9, 2009) ...........................11, 14

*Juniper Networks, Inc. v. Graphon Corp.*,
    2-09-cv-00204 (E.D. Tex. 2009)................................................2

*Kinetic Concepts, Inc. v. Medela AG*,
    2008 WL 112120 (E.D. Tex. Jan. 9, 2008)................................12

*Kroy IP Holdings, LLC v. Starbucks Corp., Inc.*,
    2014 WL 5343168 (E.D. Tex. Sept. 30, 2014) ..........................13

*NPS v. Juniper*,
    2012 WL 194382 (E.D. Tex. Jan. 23, 2012)............................. *passim*

*Optimum Power Sols. LLC v. Apple, Inc.*,
    794 F. Supp. 2d 696 (E.D. Tex. 2011) ........................................9

**Page(s)**

*Parity Networks LLC v. Juniper Networks, Inc.*,
    6-17-cv-00495 (E.D. Tex. 2017) .................................................................... 2

*PersonalWeb Techs., LLC v. Yahoo!, Inc.*,
    2014 WL 1689046 (E.D. Tex. Feb. 12, 2014) ......................................... 8

*Realtime Data, LLC v. Fujitsu Am., Inc.*,
    2017 WL 772699 (E.D. Tex. Feb. 28, 2017) ........................................... 8

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997).............................................................. 11

*Swartz v. USPTO*,
    743 F. App'x 426 (Fed. Cir. 2018) ....................................................... 13

*Texas Data Co., LLC v. Target Brands, Inc.*,
    771 F. Supp. 2d 630 (E.D. Tex. 2011) .................................................. 10

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ................................................................................. 7

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2010).............................................................. 12

*In re Volkswagen AG ("Volkswagen I")*,
    371 F.3d 201 (5th Cir. 2004) ........................................................ 7, 10, 14

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) ................................................ 7, 9

*Wireless Recog. Techs. v. A9.com, Inc.*,
    2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ........................................... 8

*Young v. Waldron*,
    2015 WL 13694664 (E.D. Tex. May 22, 2015)...................................... 15

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Comm'ns Co.*,
    402 F. Supp. 2d 731 (E.D. Tex. 2005) .................................................. 14

**Statutes**

28 U.S.C. § 1400(b) ....................................................................................... 7

28 U.S.C. § 1404(a) .............................................................................. 1, 7, 10

35 U.S.C. § 102.............................................................................................. 5

**Page(s)**

35 U.S.C. § 103.................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)....................................................................................................3

Defendant Juniper Networks, Inc. respectfully moves to transfer this case under 28 U.S.C. § 1404(a) to Judge Susan Illston of the Northern District of California. A transfer is clearly warranted here because Judge Illston has already presided over a lengthy lawsuit between the *same parties* involving patents from the *same patent family* against the *same Juniper products*. After years of heavy discovery, claim construction, and dispositive motion practice, Judge Illston issued a final judgment for Juniper, finding that the accused Juniper products did not infringe and that the asserted Implicit patents were invalid on multiple grounds.

As a matter of efficiency and fairness, Judge Illston should also handle this sequel action filed by Plaintiff Implicit, LLC. The relevant evidence and witnesses are still in Northern California, and this venue has no meaningful connection to the accused products or the parties' nearly decade-old dispute. In view of Judge Illston's extensive experience with this subject matter of this case and the weight of convenience factors, the Court should transfer this action.

## I.     FACTUAL BACKGROUND

### A.     The Parties' Background and Prior Connections to California

Juniper is a leading networking technology company headquartered in Sunnyvale, California, within the Northern District of California. Marcellin Decl. ¶ 2. Juniper sells a line of products known as the SRX Series, which it first released in 2008. *Id.* ¶ 4. Both the hardware and software for the SRX products were designed and developed at Juniper's Sunnyvale headquarters. *Id.* ¶ 5. Technical documentation and source code for the SRX products are also maintained in Juniper's Sunnyvale office along with relevant design, research, engineering, marketing, and financial documents. *Id.* ¶¶ 6, 7. The vast majority of Juniper's employees—including those who make decisions regarding sales, marketing, and financial matters related to the accused SRX products—are likewise based in Sunnyvale. *Id.* ¶ 8. By contrast, Juniper has only a single sales office within the Eastern District of Texas (in Plano), and no source code or technical work relating

to the SRX products is located there. *Id.* ¶ 11. Unsurprisingly, prior patent cases filed against Juniper in Eastern Texas are consistently transferred to Juniper's home venue in Northern California. *See, e.g.*, *Network Prot. Scis., LLC v. Juniper Networks, Inc.* ("*NPS v. Juniper*"), 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (Gilstrap, J.) (granting motion to transfer).[1]

The predecessor to Plaintiff Implicit—Implicit Networks, Inc.—was originally formed under the laws of the state of Washington with a principal place of business in Seattle. Ex. 15. Implicit's products were not successful and its business failed, as its founder and CEO (Edward Balassanian) later admitted. Exs. 1, 2. Accordingly, Implicit turned to a business model of patent litigation. In 2009, Implicit started filing lawsuits in the Northern District of California against large technology companies such as IBM, Microsoft, Oracle, Sybase, Red Hat, HTC, LG Electronics, Nokia, Samsung, and Sony Ericsson. Exs. 3, 5-9. Judge Illston was assigned nearly all of these cases. Ex. 3.

### B.      Implicit's Lawsuit Against Juniper in the Northern District of California

In 2010, Implicit launched a new round of lawsuits in Northern California against six companies (Juniper, Cisco, Hewlett-Packard, Citrix, VMWare, and F5 Networks) involving patents from two patent families: the "Demultiplexing" family (e.g., Pat. No. 6,629,163) and the "Server" family (e.g., Pat. No. 8,056,075). *Id.*; Exs. 10-15. Implicit accused some defendants of infringing both families, while it accused others (including Juniper) of infringing only the "Demultiplexing" family. *See, e.g.*, Exs. 13, 15. Judge Illston was assigned all of these cases and consolidated them for pre-trial proceedings. Ex. 18.

---

[1] *See also Parity Networks LLC v. Juniper Networks, Inc.*, 6-17-cv-00495 (E.D. Tex.), Dkt. 50; *Blue Spike, LLC v. Juniper Networks, Inc.*, 6-17-cv-00016 (E.D. Tex.), Dkt. 80; *Chrimar Sys., Inc. v. Juniper Networks Inc.*, 6-15-cv-00630 (E.D. Tex.), Dkt. 24; *Juniper Networks, Inc. v. Graphon Corp.*, 2-09-cv-00204 (E.D. Tex.), Dkt. 78.

Implicit's lawsuit involved extensive discovery based in Northern California. Juniper produced nearly two million pages of documents, all of which came from Juniper's headquarters in Sunnyvale, California. McPhie Decl. ¶ 4. Implicit produced a much smaller number of documents and provided its source code for review in its counsel's offices in San Francisco (the same counsel representing Implicit in this case). *Id.* ¶ 7. Juniper also produced its highly confidential source code for inspection at its counsel's offices in California. *Id.* ¶ 6.

The parties' fact depositions likewise took place in Northern California. Implicit deposed six Juniper employees, all of which took place in either San Francisco or Menlo Park. *Id.* ¶ 9. Mr. Balassanian was also deposed in San Francisco over multiple days. *Id.* The Rule 30(b)(6) depositions for both parties were similarly taken in San Francisco. *Id.* ¶ 10.

The parties also conducted third-party and expert discovery in Northern California. A former Implicit employee and Implicit's patent prosecutor were deposed in San Francisco, and Juniper issued a subpoena to Intel in Santa Clara, California. *Id.* ¶ 13. Most of the other third-party depositions occurred in Washington, where Implicit was founded. *Id.* ¶ 15. A patent prosecutor was deposed in Houston, Texas, and another third party was deposed in Oregon. *Id.* ¶ 16. The parties' experts were all deposed in California. *Id.* ¶ 18.

Judge Illston was deeply involved at every stage of this lawsuit. She held a detailed technical tutorial to learn about the patents and the relevant technological principles. Ex. 19 at Dkt. 51. Following the tutorial, Judge Illston held a two-day claim construction hearing (*id.* at Dkt. 53) and ultimately construed nine terms from the "Demultiplexing" family (some of which appear in the patents asserted here). *Id.* at Dkt. 69. Judge Illston was also heavily involved in resolving discovery disputes, including (1) multiple motions regarding the SXM source code and Implicit's failure to adequately cite that code in its infringement contentions (*id.* at Dkts. 64, 70, 72, 75); (2)

a failed motion to quash Juniper's subpoena to a third party in Northern California (*id.* at Dkts. 103, 105); (3) motions seeking responses to interrogatories (*id.* at Dkts. 100, 113); (4) motions regarding licensing discovery, including communications with defendants from prior Implicit cases before Judge Illston (*id.* at Dkts. 114, 119); and (5) motions relating to discovery of Juniper financial data (*id.* at Dkts. 120, 145). Judge Illston also handled non-discovery motions, including a motion to dismiss, motions to stay pending reexamination, and motions to seal the parties' highly confidential technical information. *Id.* at Dkts. 14, 106, 123, 132. Judge Illston also directed the parties' settlement efforts, resulting in two mediation sessions in San Francisco, one before Judge Edward Infante (Ret.) in June 2011 and another before Magistrate Judge Joseph Spero in October 2012. *Id.* at Dkts. 22, 24, 154.

### C.      Summary Judgment Proceedings Before Judge Illston

Following the completion of discovery, the parties proceeded to the summary judgment stage. Juniper recognized the importance of its summary judgment arguments and requested (and was granted) special leave to file motions on both invalidity and non-infringement. *Id.* at Dkts. 80, 113. The summary judgment papers were massive (thousands of pages) and technically complex (including SRX source code excerpts and full copies of Juniper's expert reports). *Id.* at Dkts. 166, 169. Juniper's co-defendant F5 Networks filed a detailed summary judgment motion on non-infringement as well. *Id.* at Dkt. 205. The parties also filed *Daubert* motions. *Id.* at Dkt. 155, 176. On December 14, 2012, Judge Illston heard argument on all of these motions including detailed slide presentations that the court cited in its final decision. *Id.* at Dkts. 203, 205.

Judge Illston issued her summary judgment order on March 13, 2013, just weeks before the final pretrial conferences. *See id.* at Dkts. 71, 104 (noting trial dates of April 15, 2013, and May 6, 2013). The decision was a complete vindication for Juniper and F5 Networks:

- Judge Illston determined that the "Decasper" reference anticipated all of the asserted claims under 35 U.S.C. § 102, based on a detailed evaluation of expert opinions, inventor testimony, and other evidence. Ex. 20 at 2-12.

- Judge Illston further concluded that, even accepting Implicit's argument that Decasper lacked certain elements of the asserted claims, one of ordinary skill would have found those claims obvious under 35 U.S.C. § 103. *Id.* at 12-15. The court's order endorsed both a single-reference theory (modifying Decasper based on background understanding of those of ordinary skill) as well as a multiple-reference theory (combining Decasper with other references). *Id.*

- Judge Illston also found that Implicit did not prove that the SRX infringed. After assessing expert and technical testimony, source code, and other technical evidence, Judge Illston concluded that Implicit's expert did not conduct an adequate source code analysis to support a finding of infringement. *Id.* at 16-22.

- Judge Illston briefly noted that, although she did not need to reach the three other non-infringement arguments that Juniper had raised, Juniper had "made a strong case that its products do not practice these three limitations." *Id.* at 22 n.25.

- Finally, Judge Illston analyzed and adopted the non-infringement defense presented by F5 Networks—which Implicit had argued was "identical" to one of the non-infringement theories that Juniper raised. *Id.* at 22-29; Ex. 21 at 5.

Implicit filed a notice of appeal to the Federal Circuit, but then quickly abandoned its appeal before even reaching the briefing stage. Accordingly, Judge Illston's decision became final.

**D.    Implicit's Later Lawsuits in California, Texas, and Delaware**

In 2014, Implicit filed a second lawsuit against F5 Networks on a newly issued continuation from the "Demultiplexing" family (Pat. No. 8,694,683, also asserted in this case). *See* Ex. 17. Notably, Implicit chose not to assert the '683 patent against Juniper at that time, despite its familiarity with the Juniper SRX products. This new case was also assigned to Judge Illston. Ex. 22. The case got as far as the claim construction stage, including full briefing and a hearing. On May 6, 2015, Judge Illston issued a claim construction order that largely rejected Implicit's claim construction arguments. *See* Ex. 23. The case settled shortly thereafter.

Following these outcomes before Judge Illston, Implicit began filing patent cases in Texas (in 2016) and in Delaware (in 2017). Ex. 38. On February 4, 2019—nearly nine years after bringing its first suit against Juniper in the Northern District of California—Implicit filed its second action against Juniper, this time in the Eastern District of Texas. Implicit's complaint identifies the previously accused Juniper SRX Series as the sole accused product. The complaint also asserts only patents from the "Demultiplexing" and "Server" families, which were the two families at issue in Implicit's previous multi-year litigation campaign in California. *See* Dkts.14-4 to 14-9 ("Demultiplexing" family patents claiming priority to Pat. No. 6,629,163); Dkts. 14-1 to 14-3 ("Server" family patents claiming priority to Pat. No. 6,324,685); *see also* Exs. 13, 15.

This motion is Juniper's first substantive action in this case. Juniper has not yet answered the complaint, but is filing a motion to dismiss on Section 101 grounds. The parties have not started discovery. There is no schedule or trial date set. The action is at the very earliest stages.

## II.    LEGAL STANDARD

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). This prevents "waste of time, energy and money and . . . protect[s] litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S.

612, 616 (1964). Ultimately, "[i]t is within the sound discretion of the court to decide to transfer venue." *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001). But a court "must exercise its discretion in light of the particular circumstances of the case." *Id.* There is "good cause" to transfer when the transferee venue is clearly more convenient. *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc). The convenience analysis focuses on a series of private and public factors addressed in detail below.

## III.   IMPLICIT COULD HAVE BROUGHT THIS ACTION IN THE NORTHERN DISTRICT OF CALIFORNIA

As a threshold matter, transfer to the Northern District of California is permissible because Implicit could have initially filed this action there. *In re Volkswagen AG ("Volkswagen I")*, 371 F.3d 201, 203 (5th Cir. 2004). In patent cases, venue is proper in "the judicial district where the defendant resides." 28 U.S.C. § 1400(b). It is undisputed that Juniper resides in the transferee venue given its headquarters in Sunnyvale. Marcellin Decl. ¶ 2. Thus, venue is entirely proper in the Northern District of California—as confirmed by Implicit's prior action against Juniper before Judge Illston.

## IV.   ALL PRIVATE INTEREST FACTORS FAVOR TRANSFER

### A.   Ease Of Access To Relevant Sources Of Proof

Because the vast majority of evidence relevant to this case is in Northern California, ease of access to sources of proof strongly favors transfer. "[T]his factor remains a part of the transfer analysis despite technological advances that have lightened the inconvenience of transporting large amounts of documents." *Realtime Data, LLC v. Fujitsu Am., Inc.*, 2017 WL 772699, at *3 (E.D. Tex. Feb. 28, 2017).

"The accused patent infringer is presumed to have the greater volume of documents relevant to the litigation such that more weight is placed on the location of the accused infringer's

documents." *Id.*; *see also Wireless Recog. Techs. v. A9.com, Inc.*, 2012 WL 506669, at *3 (E.D. Tex. Feb. 15, 2012) ("an alleged infringer's proof is particularly important to venue transfer analyses in patent infringement cases"). That presumption applies here and is confirmed by the evidence. Juniper designed and developed the SRX at its Sunnyvale headquarters. Marcellin Decl. ¶ 5. Juniper's Sunnyvale office also maintains relevant design, research, engineering, and financial documents related to the accused SRX. *Id.* ¶ 7. Decisions regarding sales, marketing, and financial matters related to the accused SRX are likewise made in Sunnyvale. *Id.* ¶ 8. Additionally, technical documents and source code relevant to the accused SRX products—*i.e.*, the most important discovery for a patent-infringement action—is at Juniper's Sunnyvale headquarters. *Id.* ¶ 6.

By contrast, Juniper does not maintain any SRX source code or relevant design documentation in Eastern Texas. *Id.* ¶ 11. Although Juniper does have a sales office in Plano, Texas, *id.*, that office has no relevance to this case. The location of Juniper's documents thus favors transfer. *See PersonalWeb Techs., LLC v. Yahoo!, Inc.*, 2014 WL 1689046, at *11, 13 (E.D. Tex. Feb. 12, 2014) (granting transfer motion despite some presence in Texas).

The prior litigation between the parties confirms with specificity that an overwhelming amount of evidence is located in Northern California. During discovery, Juniper produced nearly two million pages of documents, all of which originated from Sunnyvale. McPhie Decl. ¶ 4. These productions included Juniper's SRX source code, license agreements, technical documents, employee e-mails, financial documents, and revenue documents. *Id.* ¶ 5.

By contrast, Implicit produced a much smaller number of documents in the prior case, and those documents did not originate from the Eastern District of Texas. *Id.* ¶ 7. Indeed, Implicit only registered with Texas in 2017, after concluding its unsuccessful campaign against Juniper and F5 in Northern California. *See* Ex. 24. To this date, Implicit's "Principal Office Mailing Address" is

still in Washington, and its listed street address is for a "Shared Office Space" in Tyler. *See* Exs. 25, 26. As this Court has noted in a previous Juniper case, "[e]ven giving Plaintiff's Texas presence weight, there is no indication that Plaintiff's documents in Texas are substantial enough, whether in terms of volume or importance, to counter Juniper['s] . . . documents in California." *See NPS v. Juniper*, 2012 WL 194382, at *4.

These facts demonstrate that the vast majority of evidence in this case is likely to center in the Northern District of California and not the Eastern District of Texas. Accordingly, this factor tilts sharply in favor of transfer. *See id.* at *5 (factor regarding access to sources of proof favored transfer in case involving Juniper because "a greater amount of the sources of proof relevant to this lawsuit are located in or adjacent to the Northern District of California").

### B.    Availability of Compulsory Process

The location of third-party witnesses also favors transfer in this case. This factor weighs in favor of transfer when "more third-party witnesses reside within the transferee venue." *Optimum Power Sols. LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 701 (E.D. Tex. 2011). A venue that enjoys the absolute subpoena power for trial is more convenient than a venue where subpoenas will be subject to motions to quash. *See Volkswagen II*, 545 F.3d at 316.

Although it is not clear at this stage that this case will require extensive third-party discovery, it is notable that the prior case included two subpoenas issued to third-party witnesses who reside within Northern California: Randall Gard (Implicit's patent prosecutor) and Intel (an Implicit licensee). McPhie Decl. ¶¶ 12, 13. No subpoenas were issued to witnesses in this district. *Id.* ¶ 19. And nothing in Implicit's complaint suggests this case will be different. This factor thus weighs in favor of transfer. *See In re HP Inc.*, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018).

### C.    Cost of Attendance for Willing Witnesses

Consideration of the cost of attendance for willing witnesses likewise weighs in favor of transfer. "The Court must consider the convenience of both the party and non-party witnesses." *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 644 (E.D. Tex. 2011). "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05.

In this case, all relevant technical witnesses with knowledge regarding the design, development, and testing of the accused SRX product are in Northern California. Marcellin Decl. ¶ 9. Juniper employees who know about the SRX product's marketing, sales, and financial information similarly reside in Northern California. *Id.* ¶ 8. This is consistent with the parties' first lawsuit regarding the SRX product, where ***all*** Juniper employees that Implicit deposed were in Northern California. McPhie Decl. ¶ 9. It would be significantly more burdensome for these witnesses to travel to Marshall than for them to appear before Judge Illston, who is in San Francisco—a one-hour drive from Juniper's Sunnyvale location. Ex. 27. Traveling to Marshall would involve either (1) a 3-hour, 30-minute flight to Dallas and then a 2-hour, 40-minute drive to Marshall or (2) a 5-hour, 30-minute flight to Shreveport, Louisiana, and then a 40-minute drive to Marshall. Exs. 28-31. Traveling to Marshall would also require overnight stays, and it would impose "meal and lodging expenses" and "increase[] the time [during] which [witnesses] must be away from their regular employment." *Volkswagen I*, 371 F.3d at 205.

By contrast, Juniper is not aware of any relevant witnesses within the Eastern District of Texas. In the prior action, all of Implicit's employees resided in Washington. McPhie Decl. ¶ 17. It is a 3-hour, 45-minute flight from Seattle to Dallas and then a then a 2-hour, 40-minute drive to Marshall (about 6 hours total travel). Exs. 30, 32. It would be far easier for these witnesses to take

a 2-hour, 15-minute direct flight from Seattle to San Francisco.[2] Ex. 33. Additionally, to the extent

Mr. Balassanian now resides in Austin, Texas, he would still require significant travel regardless

of whether this case takes place in San Francisco or Marshall.[3] Therefore, if this case remains in

this district, **all** witnesses would likely have to travel a substantial distance.

This factor thus heavily favors transfer, as this Court has noted in prior cases involving

Juniper. *See NPS v. Juniper*, 2012 WL 194382, at *6 ("The number of witnesses residing in Texas,

and any relevant information which they may provide, pales in comparison to the number of party

and non-party witnesses with relevant information residing in Northern California.").

### D.    Other Practical Problems

"[C]onsideration of the interest of justice, which includes judicial economy," weighs

strongly in favor of transfer to Northern California here. *Regents of the Univ. of Cal. v. Eli Lilly &*

*Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997). Indeed, this factor is often "determinative" to the

outcome of a transfer motion. *Id.*; *see also Invitrogen Corp. v. Gen. Elec. Co.*, 2009 WL 331891,

at *4 (E.D. Tex. Feb. 9, 2009) (observing "[i]n patent cases, [judicial economy] is of particular

importance and may be determinative even if the parties' considerations call for a different result").

The Federal Circuit has specifically urged that courts should avoid duplication of efforts that would

result in the trying of similar or identical cases in different jurisdictions. *In re Google Inc.*, 588 F.

App'x 988, 991-92 (Fed. Cir. 2014). And "courts have consistently held that judicial economy

plays a paramount role in trying to maintain an orderly, effective, administration of justice." *In re*

*Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010).

---

[2] It is roughly a half-hour drive from San Francisco airport to the courthouse. Ex. 36.

[3] A flight from Austin to San Francisco is about 3 hours, 45 minutes. Ex. 35. Driving from Austin to Marshall is about 4 hours, 45 minutes. Ex. 37. A flight from Austin to Dallas is about an hour, followed by a 2-hour, 40-minute drive (3 hours and 40 minutes total). Exs. 30, 36.

Courts have consistently relied on this factor in transferring cases to venues that handled earlier lawsuits with similar patents, technologies, products, and defendants. *See, e.g., Kinetic Concepts, Inc. v. Medela AG*, 2008 WL 112120, at *1–2 (E.D. Tex. Jan. 9, 2008) (transferring case to court that "ha[d] substantial experience with these parties, and [] invested time and effort in learning the technology at issue in the case"); *In re Eli Lilly & Co.*, 541 F. App'x 993, 994 (Fed. Cir. 2013) (transferring to court that had "already conducted discovery, claim construction, and ruled on motions for summary judgment involving the same family of patents").

These same considerations weigh heavily in favor of transfer here. As explained above, Judge Illston invested significant resources in handling the earlier dispute between these two parties from start to finish. *See* Section I. That case involved the same Juniper products that Implicit has accused here: the SRX Series. *See* Ex. 15. Moreover, six of the asserted patents in this case are directly related to the patents asserted in that prior case—they are in the same "Demultiplexing" family, and are descendants of the '163 Patent that was asserted previously. Judge Illston took time to learn about the patented technology during the parties' tutorial, and then construed nine claims in those patents. *Id.* at Dkts. 51, 69. And Judge Illston gained even deeper familiarity with these patents and Juniper's technology when she determined that Implicit's patents were invalid and that Implicit failed to prove Juniper's SRX products infringed. *Id.* at Dkt. 205.

Additionally, of the twelve other cases regarding Implicit's patents that Judge Illston has overseen, five of those actions involved the '685 Patent, from which three of the patents in this action are descendants (the Server patent family). *See* Exs. 4, 5, 6, 10, 13. And Judge Illston has direct experience with others of the specific patents currently involved in this action. Ex. 16 ('075 Patent); Ex. 23 ('683 Patent).

Judge Illston's summary judgment order is significant to this action for another reason. Because of the similarities between the patents in that case and those asserted in this case, Judge Illston's findings regarding invalidity and non-infringement will be binding upon Implicit in this case as a matter of issue preclusion. *See ArcelorMittal Atlantique et Lorraine v. AK Steel Corp.*, 908 F.3d 1267, 1274 (Fed. Cir. 2018) ("[W]here an alleged infringer prevails, the accused products gain non-infringing status and the alleged infringer acquires the status of a non-infringer to the extent that the accused products remain the same."); *Swartz v. USPTO*, 743 F. App'x 426, 428 (Fed. Cir. 2018) (issue preclusion applied where child application's claims were substantially identical to the parent application's claims). Judge Illston is best situated to consider these issues due to her heavy involvement in the prior action. Similarly, Judge Illston's familiarity with the facts and procedure of the prior case will be relevant in evaluating other defenses in this case such as equitable estoppel, inequitable conduct, and improper claim-splitting (among others).

The other cases filed by Implicit in this venue shortly after it sued Juniper are not entitled to any weight and do not cause this factor to weigh against transfer. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("district court may properly consider any judicial economy benefits which would have been apparent *at the time the suit was filed*") (emphasis added). And although Implicit filed earlier cases in this venue, none involved Juniper, much less any issues involving the accused SRX products, the relevant sources of proof including source code and financial data, or the impact of the parties' past litigation before Judge Illston. As this Court has noted, "standing alone, the presence of separately filed cases cannot justify venue in this district, or defeat an otherwise compelling case for transfer." *Kroy IP Holdings, LLC v. Starbucks Corp.*, 2014 WL 5343168, at *4 (E.D. Tex. Sept. 30, 2014). And justice is better served by rejecting Implicit's strategic maneuvering on venue following Judge Illston's repeated adverse decisions.

Transfer of this action would thus significantly encourage judicial efficiency given Judge Illston's familiarity with the litigants, their litigation history, the accused products, the patent families, and the relevant technology. This factor thus strongly favors transfer. *See Invitrogen*, 2009 WL 331891, at *4 ("transfer is most appropriate when one court has extensive familiarity with the technology or the legal issues involved, a claim construction opinion has been prepared, and the cases involve the same or similar Defendants with the same or similar products.").

## V.     THE PUBLIC INTEREST FACTORS COLLECTIVELY FAVOR TRANSFER

### A.     Court Congestion

As this Court has noted on prior occasions, the factor involving court congestion is the "most speculative," *see NPS v. Juniper*, 2012 WL 194382, at *6, and is neutral at best in this case. As a general matter, both the Northern District of California and the Eastern District of Texas are well-equipped to handle patent cases and use local patent rules for efficient adjudication. Moreover, the impact of Judge Illston's prior knowledge of the patents, technology, parties, and relevant issues is likely to have a much greater impact on the efficient disposition of this case than any comparative statistics regarding docket handling. *Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Comm'ns Co.*, 402 F. Supp. 2d 731, 737 (E.D. Tex. 2005). When "several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors." *NPS v. Juniper*, 2012 WL 194382, at *6. This factor is accordingly neutral.

### B.     Local Interest

The local interest factor favors transfer because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quotations omitted). Northern California has a strong local interest in deciding this case—it is the location where Juniper designed and developed the accused SRX product.

Marcellin Decl. ¶ 5. Juniper also employs thousands of individuals within that district. *Id.* ¶ 3. Although Juniper does sell the accused SRX product throughout the United States and abroad, "'[i]nterests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests." *NPS v. Juniper*, 2012 WL 194382, at *7. In comparison, this Court has previously noted that there is no local interest in this District based on Implicit's presence or otherwise. *See also* Exs. 24, 26. Accordingly, because Northern California residents have a particularized interest in this lawsuit, this factor weighs in favor of transfer. *See NPS v. Juniper*, 2012 WL 194382, at *7 ("Even considering Plaintiff's small and fairly recent operations in Texas, the court concludes that the 'local interest' factor weighs in favor of transfer.")

## C. Familiarity with the Law and Avoidance of Conflicts of Law

These last two factors also weigh in favor of transfer. Although federal patent law will apply in either forum, when a court has already "heavily litigated" an issue, that court "is considerably more familiar with the law that governs *this case*." *Young v. Waldron*, 2015 WL 13694664, at *3 (E.D. Tex. May 22, 2015) (last two factors weighed heavily in favor of transfer based on transferee court's experience with related dispute). Additionally, "hearing [a] dispute in this forum creates the potential of this court issuing conflicting rulings with the [other district], which has presided over this matter of a lengthy period of time." *Id.* "This, however, can be avoided with transfer." *Id.* Accordingly, these factors also favor transfer.

## VI. CONCLUSION

In sum, the relevant factors weigh strongly in favor of transfer. Because Judge Illston has extensive experience with these parties, the relevant technology, the accused products, and the relevant patent families, the Court should transfer this action to the Northern District of California.

Date: May 2, 2019                          Respectfully submitted,

                                           By: */s/ Melissa R. Smith*

                                           **IRELL & MANELLA LLP**
                                           David McPhie
                                           Pro Hac Vice
                                           (CA State Bar No. 231520)
                                           840 Newport Center Drive, Suite 400
                                           Newport Beach, CA 92660
                                           Telephone:   (949) 760-0991
                                           Facsimile:   (949) 760-5200
                                           Email:  dmchpie@irell.com

                                           Jonathan S. Kagan
                                           Pro Hac Vice to be Filed
                                           (CA State Bar No. 166039)
                                           1800 Avenue of the Stars, Suite 900
                                           Los Angeles, CA 90067-4276
                                           Telephone:  (310) 277-1010
                                           Facsimile:   (310) 203-7199
                                           Email:  jkagan@irell.com

                                           **GILLAM & SMITH LLP**
                                           Melissa Richards Smith
                                           (Texas Bar No. 24001351)
                                           303 South Washington Avenue
                                           Marshall, TX 75670
                                           Telephone:  (903) 934-8450
                                           Facsimile:   (903) 934-9257
                                           Email:  melissa@gilliamsmithlaw.com

                                           **Attorneys for Defendant Juniper Networks, Inc.**

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email and/or fax, on this the 2nd day of May 2019.

*/s/ Melissa R. Smith*
Melissa R. Smith

## **CERTIFICATE OF CONFERENCE**

The undersigned herby certifies that counsel for Juniper has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on April 26, 2019. No agreement could be reached.

*/s/ Melissa R. Smith*
Melissa R. Smith