# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| IMPLICIT, LLC, | ) Civil Action No. 2:19-cv-00037-JRG-RSP |
| *Plaintiff,* | ) |
| v. | ) JURY TRIAL DEMANDED |
| JUNIPER NETWORKS, INC. | ) |
| *Defendant.* | ) |

## PLAINTIFF IMPLICIT, LLC'S RESPONSE TO DEFENDANT JUNIPER NETWORKS, INC.'S MOTION TO TRANSFER VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. NO. 18)

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION AND SUMMARY ................................................................................1

II. FACTUAL BACKGROUND ..............................................................................................2

    A. The Prior Litigation in the Northern District of California.......................................2

    B. The Cases Before this Court ....................................................................................3

III. THE LAW............................................................................................................................4

IV. ARGUMENT.......................................................................................................................5

    A. Judicial Economy Would Not Be Served By the Transfer ......................................5

        1. Judge Illston's Experience with Implicit's Technology is Remote ...................5

        2. This Court Has Now Moved Beyond N.D. Cal.'s Prior Guidance ....................6

        3. It is Highly Speculative to Suggest the Case Would be Assigned to Judge Illston ................................................................................................................8

    B. The Other Factors Do Not Favor Transfer...............................................................9

        1. Ease of Access to Relevant Sources of Proof Weighs Against Transfer.....9

        2. Availability of Compulsory Process Weighs Against Transfer..................11

        3. Cost of Attendance for Willing Witnesses Weighs Against Transfer .......11

        4. Court Congestion Weighs Against Transfer...............................................12

        5. "Local Interest" Factor Weighs Against Transfer ......................................13

        6. All Federal District Courts are Equally Competent at Patent Law............14

V. CONCLUSION..................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                                                    **Page**

*Alacritech Inc. v. CenturyLink, Inc.*,
    No. 2:16-CV-00693-JRG (RSP), 2017 WL 4155236 (E.D. Tex. Sept. 19, 2017).............12

*ColorQuick, L.L.C. v. Vistaprint Ltd.*,
    No. 6:09-CV-323, 2010 WL 5136050 (E.D. Tex. July 22, 2010) .....................................12

*Implicit, LLC v. Huawei Techs. USA, Inc.*,
    No. 6:17-CV-182-JRG, 2018 WL 1169137 (E.D. Tex. Mar. 6, 2018)............................ 3-4

*Implicit, LLC v. NetScout Systems, Inc.*,
    No. 2:18-cv-00053-JRG...................................................................................... 3-4, 7

*Implicit, LLC v. Palo Alto Networks, Inc.*,
    No. 6:17-CV-00336-JRG, 2018 WL 1942411,
    (E.D. Tex. Feb. 20, 2018) ...........................................................................1, 3-4, 7, 9-12

*Implicit Networks, Inc. v. F5 Networks, Inc.*,
    No. 2:19-cv-00037-JRG (N.D. Cal. Jun. 2014) ..........................................................3, 5, 7

*Implicit Networks, Inc. v. Juniper Networks, Inc.*,
    No. 3:10-cv-4234-SI (N.D. Cal. 2010) ................................................................... 2-3, 5, 8

*Implicit Networks, Inc. v. Trend Micro*,
    No. 6:16-cv-80-JRG, 2017 WL 1190373 (E.D. Tex. Mar. 29, 2017)...................... 1, 3-4, 7

*In re Eli Lilly & Co.*,
    541 F. App'x 993 (Fed. Cir. 2013) .....................................................................................6

*In re Google Inc.*,
    588 F. App'x 988 (Fed. Cir. 2014) .....................................................................................6

*In re Verizon Bus. Network Servs. Inc.*,
    635 F.3d 559 (Fed. Cir. 2011)......................................................................................... 5-6

*Invitrogen Corp. v. Gen. Elec. Co.*,
    2009 WL 331891 (E.D. Tex. Feb. 9, 2009) ..................................................................... 5-6

*J2 Glob. Commc'ns. Inc. v. Protus IP Sols., Inc.*,
    No. CIV.A. 6:08-CV-211, 2008 WL 5378010 (E.D. Tex. Dec. 23, 2008).........................13

*Juniper Networks, Inc. v. Toshiba Am., Inc.*,
    No. 2:05-cv-479-TJW, 2007 WL 1192308 (E.D. Tex. Apr. 23, 2007) ..............................9

*NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*,
    2010 WL 5068146 (E.D. Tex. Dec. 6, 2010) ...................................................................10

*Realtime Adaptive Streaming LLC v. Amazon.com, Inc.*,
    No. 6:17-CV-00549-JRG, 2018 WL 4444097 (E.D. Tex. Sept. 5, 2018) .........................13

*Realtime Data, LLC v. Actian Corp.*,
    No. 6:15-CV-463, 2016 WL 4054914 (E.D. Tex. July 28, 2016) .......................................7

*Realtime data, LLC v. Hewlett Packard Enter. Co.*,
    No. 6:16-CV-00086-RSW (JDL), 2017 WL 3709095 (E.D. Tex. Feb. 3, 2017) ..............14

*Time Warner Cable, Inc. v. USA Video Tech. Corp.*,
    520 F. Supp. 2d 579 (D. Del. 2007) ...................................................................................9

*Uniloc USA Inc. v. Box, Inc.*,
    No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ..............................13

*Young v. Waldron*,
    No. 1:15-CV-14, 2015 WL 13694664 (E.D. Tex. May 22, 2015) ....................................14

## **Statutes**

§ 1404(a) ......................................................................................................................................4

## **Miscellaneous**

Northern District of California Local Rule 3-12 ..........................................................................8
Northern District of California General Order No. 44 .................................................................8

I.  **INTRODUCTION AND SUMMARY.**

In two prior Implicit cases filed in this district, Defendants move to transfer the cases to the Northern District of California. *See Implicit, LLC v. Palo Alto Networks, Inc.*, No. 6:17-CV-00336-JRG, 2018 WL 1942411 (E.D. Tex. Feb. 20, 2018) & *Implicit Networks, Inc. v. Trend Micro,* No. 6:16-cv-80-JRG. After a careful balancing of the competing interests and the *Volkswagen* factors, this Court denied both motions.

Appreciating this record, Juniper Networks, Inc. ("Juniper") argues that this Juniper case is different. It argues that Judge Susan Illston of the Northern District of California ("N.D. Cal") "has already presided over a lawsuit between the *same parties* involving patents from the *same patent family* against the *same Juniper products*." Juniper Br. at 1. Juniper contends that judicial economy is "determinative", and—given Judge Illston's familiarity with these patents—judicial economy warrants, if not mandates, transfer here. Juniper Br. at 11; *see also id.* at 12-14.

This is a peculiar argument in two respects, both unacknowledged by Juniper. First, the Juniper litigation that Judge Illston presided over many years ago involved different patents and different claims. Judge Illston did not address the Asserted Patents and claims; indeed, at the time of the N.D. Cal cases, six of the eight patents asserted here had yet to issue.

Second, and significantly, Juniper utterly ignores that this district—and this very Court—has substantial experience in Implicit cases over the last two years. This experience involves the very patents and claims asserted in this case. This Court has conducted four claim construction hearings and disposed of numerous summary judgment motions, and presided over two cases through the pretrial conference (both settled shortly before trial). If Juniper is taken at its word that judicial economy should be dispositive, then it has entirely inverted the factual record here: this Court has the relevant and recent experience over the Northern District of California. *See*

below, § II. A-B.  More, under N.D. Cal practice, this Juniper case would **not** automatically be assigned to Judge Illston if transferred.  Instead, Juniper would have to file a motion to relate, which Judge Illston might or might not grant (as a judge who has taken senior status).  *See* below, § IV.A.3.

Even apart from judicial economy, the traditional convenience factors do not warrant transfer.  Implicit has a presence in this district.  Its offices and records are here, as this Court has previously recognized.  *See* below, § IV.B.1.  And Juniper has a significant presence in this district, with its only official Texas sales office located in Plano.  More, Juniper has significant engineering offices in North Dallas, a substantial office in Austin, and an office in Houston.  In short, both parties have a significant presence in this district and in Texas.

Finally, most of the third-party witnesses essential to Juniper's inevitable validity attack do not reside in the Northern District of California.  They rather reside in Arizona, New Jersey, and elsewhere.  *See* Declaration of Spencer Hosie ("Hosie Dec."), ¶ 4.

Based on all these factors, and considering which Court has the relevant and recent experience, Implicit respectfully requests that Juniper's Motion to Transfer be denied.

II.     **FACTUAL BACKGROUND.**

    A.     **The Prior Litigation in the Northern District of California.**

*Implicit Networks, Inc. v. Juniper Networks, Inc.*, No. 3:10-cv-4234-SI—Plaintiff's case against Juniper, before Judge Susan Illston in the Northern District of California—was filed over 9 years ago in 2010. *See* Juniper's Motion to Transfer Venue ("Juniper Br.") at 6. Only two patents were asserted against Juniper at that time: Patent No. 6,629,163 ("the '163 patent") and Patent No. 7,711,857 ("the '857 patent"), which is a continuation of the '163 Patent. *See* Declaration of Michael Marcellin in Support of Juniper Br. (ECF No. 18-1) ("Marcellin Dec."), Ex. 15 at 9.

On February 29, 2012—over seven years ago—Judge Illston issued a claim construction order construing terms from just "nine disputed claims in two patents," where the two patent specifications were "largely identical." *Implicit Networks, Inc. v. Juniper Networks, Inc.*, No. 3:10-cv-4234-SI, ECF No. 69 at 1:24 & 5 n.4. The only claims partially construed by Judge Illston were Claims 1, 15, and 35 of the '163 patent; and Claims 1, 4, and 10 of the '857 patent.

Judge Illston also decided the related case, *Implicit, LLC v. F5 Networks, Inc.* ("*F5 Networks II*"), 3:14-cv-2856-SI, which was filed June 20, 2014 and dismissed in July 2015.

### B.  The Cases Before this Court.

Implicit now asserts eight patents against Juniper: Patent Nos. 8,056,075 (the "'075 Patent"); 8,856,779 (the "'779 Patent"); 9,325,740 (the "'740 Patent"); 8,694,683 ("'683 Patent"); 9,270,790 (the "'790 Patent"); 9,591,104 (the "'104 Patent"); 10,027,780 (the "'780 Patent"); and 10,033,839 (the "'839 Patent") (collectively, the "Asserted Patents").  As evidenced by Ex. 38 to Juniper's Motion, Implicit has filed 14 separate cases in this district, alleging infringement of the Asserted Patents.

Judge Illston has not seen the majority of these patents, six of which issued after the N.D Cal proceedings.  However, this Court has recent, substantive experience with each of them. *See* Ex. 40 (chart depicting patents asserted in N.D. Cal compared to this district). Specifically, *Implicit, LLC v. TrendMicro*, No. 6:16-cv-80-JRG ("TrendMicro") and *Implicit, LLC v. Huawei Techs. USA, Inc.,* No. 6:17-CV-182-JRG ("*PAN*")[1] were before this Court, and *Implicit, LLC v. NetScout Systems, Inc.*, No. 2:18-cv-00053-JRG is currently pending before this Court.

---

[1] Palo Alto Networks ("PAN")'s separate case was later consolidated with *Implicit, LLC v. Huawei Techs. USA, Inc.*.

In *TrendMicro*, Implicit asserted the '779 Patent; '685 Patent; '740 Patent; '790 Patent; and '683 Patent in litigation lasting 22 months. The Court there issued a lengthy claim construction order in March 2017, construing eleven terms from five patents (four of which are Asserted Patents in this case). *See generally Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-80-JRG, 2017 WL 1190373 (E.D. Tex. Mar. 29, 2017). The Court held a pretrial conference on September 21, 2017, and decided several motions to strike testimony in October 2017. *See* Ex. 41 at ECF Nos. 150, 159, 164, 231, 232, 249, and 253. The case settled shortly before trial.

In *PAN*, the Court presided through the pretrial conference, before the case was settled. The Court issued a claim construction order in March 2018. *See Implicit, LLC v. Huawei Techs. USA, Inc.*, No. 6:17-CV-182-JRG, 2018 WL 1169137, at *2 (E.D. Tex. Mar. 6, 2018) ("*PAN*").

In the consolidated *NetScout* and *Sandvine* cases, the Court issued a claim construction order as recently as April 15, 2019, construing 29 claims across three patents: Claims 1, 2, 4, 5, 8, 9, 10 and 24 of the '683 Patent; Claims 1, 3, 4, 5, 8, 10, 12, 15, 17, and 18 of the '790 Patent; and Claims 1, 3, 5, 10, 12, 13, and 16 of the '104 Patent. *See Implicit, LLC v. NetScout Sys., Inc.*, No. 2:18-CV-53-JRG, 2019 WL 1614725, at *5 (E.D. Tex. Apr. 15, 2019) & Ex. 40.

### III. THE LAW.

The purpose of a motion to transfer venue under Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Implicit, LLC v. Palo Alto Networks, Inc.*, No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *1 (E.D. Tex. Feb. 20, 2018). The relevant timeframe for the Court to consider is "the situation which existed when suit was instituted." *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013). "While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's

elevated burden of proof.  In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff.  Absent such a showing, the plaintiff's choice is to be respected." *Id.* at *2 (internal citations omitted).

## IV.   ARGUMENT.

### A.   Judicial Economy Would Not Be Served By the Transfer.

Juniper contends that judicial economy is "often 'determinative' to the outcome of a transfer motion. …'[judicial economy] is of particular importance and may be determinative even if the parties' considerations call for a different result.'" Juniper Br. at 11 (*quoting Invitrogen Corp. v. Gen. Elec. Co.,* 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009)).  Implicit agrees.  Keeping this case in this Court would serve judicial economy because this Court has far more recent familiarity with Implicit's technology and the Asserted Patents, and so this factor weighs strongly against transfer to N.D. Cal.

#### 1.   Judge Illston's Experience with Implicit's Technology is Remote.

The parties' primary dispute lies in which Court's knowledge will minimize duplicative judicial effort.  Defendant argues that Judge Illston's familiarity with the patents and accused product render transfer to Judge Illston's court judicially efficient. Juniper Br. at 12-13.  However, as noted above (§ II.A), nine years have elapsed since the N.D. Cal cases were filed, the *Juniper* case was terminated some five years ago, and Judge Illston's experience with the patents ended when *F5* terminated in 2015. *See* Ex. 22 to Juniper Br.

That passage of time is significant. The Federal Circuit has found that a Court's experience presiding over a previous case five years prior involving the same patent was "too tenuous" to support claims of judicial efficiency. *In re Verizon Bus. Network Servs. Inc.*, 635

F.3d 559, 562 (Fed. Cir. 2011). Here, Judge Illston's experience is at least five years old, which undermines any alleged judicial efficiency as the court would need to "relearn a considerable amount based on the lapse in time between the two suits." *Id.* More, Judge Illston would further encounter a slew of new patents and claims. Six of the eight Asserted Patents did not issue until after the N.D. Cal proceedings concluded, and the "App Server" patent family was previously neither asserted against Juniper, nor construed by Judge Illston. *See* § II.A-B, above; *see also In re Verizon*, 635 F.3d at 562 (finding that re-examination materials not previously in the record would require significant expenditure of judicial resources for the legacy court).

None of the cases cited by Defendant involve a fact pattern similar to the one here, where prior litigation between the same parties is removed in time and involves early patents, while the current district has extensive, recent experience with the Asserted Patents. Juniper's own cases make these points plainly. In *Invitrogen Corp. v. Gen. Elec. Co.,* the case was filed within a year of settling a related case in the transferee venue, and this Court lacked previous experience with the patents-in-suit. *See* No. 6:08-cv-112, 2009 WL 331891, at *1 (E.D. Tex. Feb. 9, 2009*).* The transferor court in *In re Eli Lilly & Co*., 541 F. App'x 993, 994 (Fed. Cir. 2013) had no prior experience whatsoever with the case or patents, and so naturally transferred the case to the Central District of California Court, which had recently "presided over four cases involving the same family of patents." *Id. In re Google Inc.* is directed to an entirely distinct analysis of whether or not to stay infringement proceedings pending a parallel declaratory action in another venue, which is inapplicable at least because, in the instant case, there exists no pending parallel action in N.D. Cal. *See id*., 588 F. App'x 988, 990 (Fed. Cir. 2014).

### 2. **This Court Has Significant, Recent Experience with the Patents.**

Despite Juniper's contention that none of the recent cases filed in this venue involve "the impact of the parties' past litigation before Judge Illston," this Court has, in fact, already considered at least one aspect of the 'impact' of the N.D. Cal cases on litigation of the Asserted Patents. In the claim construction orders issued in *TrendMicro* and *NetScout,* the Court acknowledged the N.D. Cal court's constructions in *Implicit Networks, Inc. v. F5 Networks, Inc.*, No. 3:10-cv-3365-SI, 2012 U.S. Dist. LEXIS 27238 (N.D. Cal. Feb. 29, 2012) ("*F5 Networks I*") and *Implicit L.L.C. v. F5 Networks, Inc.*, No. 3:14-cv-2856-SI, 2015 U.S. Dist. LEXIS 60197 (N.D. Cal. May 6, 2015) ("*F5 Networks II*"). In *TrendMicro*, the Court determined the constructions were "relate[d]," yet proceeded to author 46 pages (or 22 Westlaw pages) containing its own detailed construction rationale. *See Implicit, LLC v. Trend Micro, Inc.*, No. 6:16-CV-80-JRG, 2017 WL 1190373, at *3 (E.D. Tex. Mar. 29, 2017) ("The *F5 Networks I* and *F5 Networks II* constructions relate to the 'sequence of routines,' 'sequence of two or more routines' and 'list of conversion routines' limitations of the Asserted Patents"). Similarly, in *NetScout,* the Court considered, for example, each construction of "sequence of routines" from *F5 Networks II*, *TrendMicro,* and *Huawei* before scrutinizing the intrinsic evidence itself to arrive at yet another construction of the term "sequence of routines." *See Implicit, LLC v. NetScout Sys., Inc.,* No. 2:18-CV-53-JRG, 2019 WL 1614725, at *5 (E.D. Tex. Apr. 15, 2019).

This case will also likely involve analysis beyond Judge Illston's earlier claim constructions. Juniper's argument that collateral estoppel should apply to the Asserted Patents is plainly wrong. For example, the Asserted Patents may share "parentage" with the patents that were before Judge Illston, but the claims of each child patent are not identical. *See* Ex. 44. Construction of claims from related patents may elicit entirely different claim constructions for similar terms with non-identical language. *See e.g. Realtime Data, LLC v. Actian Corp.*, No.

6:15-CV-463, 2016 WL 4054914, at *9 (E.D. Tex. July 28, 2016) (finding claim construction not collaterally estopped for related patents previously construed in prior litigation because the claims contained slightly different language and therefore raised different issues).

This case involves patents not asserted against Juniper, a patent family never construed by Judge Illston, and claim language distinct from the patents at issue in Juniper's earlier N.D. Cal case.

### 3. It is Speculative to Suggest the Case Would be Assigned to Judge Illston.

Even if the Court granted Defendants' motion to transfer this litigation to N.D. Cal, it is unlikely that Judge Illston would be assigned to the case. In N.D. Cal, the Patent Local Rules provide that cases involving the **same patent** may be per se related if the prior case was filed **within two years** of the case at hand. *See* N.D. Cal. Patent Local Rule 2-1(a). Neither is true here. Judge Illston never dealt with the majority of the Asserted Patents, and *Implicit Networks, Inc. v. Juniper Networks, Inc.* was filed over nine years ago. *See* §II.A, above. This case would not be automatically "related" to the 2010 Juniper case under the district's Local Rules.

Instead, according to N.D. Cal's General Order No. 44, the case would be assigned randomly. *See* N.D. Cal General Order No. 44. General Order No. 44, known as the "Assignment Plan," discusses how the random assignment of cases is adjusted to evenly distribute caseloads among available judges. Under the Assignment Plan, Judge Illston's senior status further reduces the likelihood that she would be assigned this case, as her caseload is proportionally lower than other non-senior status judges. *See* N.D. Cal General Order No. 44.

In order for a N.D. Cal court to even consider relating the cases, Juniper would need to separately file an administrative motion to relate the cases once this case was transferred to a randomly assigned N.D. Cal court. The motion to relate under N.D. Cal Local Rule 3-12 is

discretionary and concerns convenience and judicial economy factors similar to those at issue in this Motion. *Compare* N.D. Cal Local Civil Rule 3-12 *with Implicit, LLC v. Palo Alto Networks, Inc.*, No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *1 (E.D. Tex. Feb. 20, 2018) (discussing factors considered when deciding a §1404 motion to transfer venue).

If the case is not transferred to Judge Illston, then judicial efficiency would be undermined, not served. In short, Juniper's premise, that the case would perforce go to Judge Illston if transferred, is infirm. *Cf. Time Warner Cable, Inc. v. USA Video Tech. Corp.,* 520 F. Supp. 2d 579, 588 (D. Del. 2007) ("TWC asserts that this court's familiarity with the claim language and prosecution history, through *Movielink*, will yield prompt resolution of the suit because USVO's claims lack merit. Yet, Judge Jordan, who previously presided over *Movielink* and was versed in the ′792 patent, was appointed to the U.S. Court of Appeals for the Third Circuit. Therefore, this court is no more familiar with the ′792 patent than is the Eastern District of Texas.")

### B.   The Other Factors Do Not Favor Transfer.

#### 1.   Ease of Access to Relevant Sources of Proof.

Usually, infringers are presumed the source of the bulk of the evidence produced in patent litigation, and Juniper emphasizes the evidence available to it in N.D. Cal.[2] However, Juniper ignores the fact that Implicit anticipates producing a comparable quantity of documents in this litigation, *see* Hosie Dec., ¶ 2-3, the vast majority of which is located at Implicit's office

---

[2] Juniper seemed to have no qualms about availing itself of this district's forum in a patent infringement suit against Toshiba America, Inc.  *See Juniper Networks, Inc. v. Toshiba Am., Inc.*, No. 2:05-cv-479-TJW, 2007 WL 1192308 (E.D. Tex. Apr. 23, 2007) (claim construction opinion).

in this district or its trial counsel's offices elsewhere in Texas.[3] *See* Balassanian Dec., ¶ 7. In prior litigation in this district, Implicit produced over 154,000 pages of hard copy documents, hundreds of pages of source code, and over 95,000 multiple-page native files, all easily totaling at least hundreds of thousands, if not millions, of pages. *See* Hosie Dec., ¶ 3.

Implicit is registered as a Texas entity, with its principal place of business in Austin, Texas. *See* Ex. 47 (showing Implicit's principal place of business is in Austin, TX) & Balassanian Dec, ¶ 5. Implicit also maintains an office in Tyler, Texas (within this district). *See* Balassanian Dec., ¶ 5. The majority of Implicit's hard copy and original documents relevant to this litigation are located either at Implicit's Tyler office, or its trial counsel's offices in Austin, Dallas, or Longview, Texas. *See id.* at ¶ 7. Further, Implicit's patent prosecution attorneys are in Austin, Texas; Houston, Texas; and Seattle, Washington, along with numerous patent prosecution documents relevant to this litigation. *See id.*, ¶ 6.

Juniper's argument that Implicit's sources of proof are inadequate purely because it has not been a Texas entity for a sufficient time period is mistaken. *See* Juniper Br. at 8. The Court previously found that the length of time Implicit had been registered as a Texas entity (then, only a few months) was no basis to conclude that its principal place of business was not properly in Texas. *See Implicit, LLC v. Palo Alto Networks, Inc.,* No. 6:17-CV-00336-JRG, 2018 WL 1942411, at *3 (E.D. Tex. Feb. 20, 2018) (citing *NovelPoint Learning LLC v. LeapFrog Enterprises, Inc.*, 2010 WL 5068146 (E.D. Tex. Dec. 6, 2010)) ("[P]laintiff formed four months before filing suit, was organized under Texas law, and had its principal place of business in the EDTX, formation four months before complaint was filed not "recent" under Federal Circuit

---

[3] As noted in Balassanian Dec., ¶ 2, the facts supporting this Opposition are accurate as of the date this case was filed.

precedent"). The Court determined, "Implicit maintains its corporate and other records in Texas and maintains its principle place of business in Texas. ... Accordingly, Implicit's Texas location is a factor that must be considered in the venue transfer analysis." *See Implicit, LLC v. Palo Alto Networks, Inc.,* 2018 WL 1942411, at *3.

As Plaintiff's evidence is almost entirely sourced from its office in Tyler and its trial counsel's offices in Austin, Dallas and Longview, this factor is at least neutral to transfer, if not weighted slightly against transfer.

### 2. Availability of Compulsory Process.

On balance, third-party witnesses relevant to this case are not located exclusively in either the proposed transferee or transferor districts, so the availability of compulsory process factor is neutral.

Juniper admits that in the prior N.D. Cal litigation five to seven years ago, "[m]ost of the other third-party depositions occurred in Washington [Implicit's place of business at the time] …a patent prosecutor was deposed in Houston, Texas, and another third party was deposed in Oregon." Juniper Br. at 3. Juniper supports its argument with only two subpoenas served in the prior litigation, one for Implicit's patent counsel, and the other for an Implicit licensee. Currently, the potential third party witnesses are both more numerous and more dispersed. Implicit's current and former patent prosecution attorneys are located in Austin, Houston, or Seattle. *See* Balassanian Dec., ¶ 6. Third-party witnesses relevant to the validity of the Asserted Patents (recently deposed in Implicit's pending *NetScout* litigation) reside in locations across the country: David Wolf, in Seattle, WA; Larry Peterson in Tucson, AZ and Princeton, NJ; David Mosberger in Boulder, CO; Garth Novak in Seattle, WA; Robert Roth in Seattle, WA; John

Hartman in Tucson, AZ; Dan Decasper in San Jose, CA; and Marc Fiuczynski in Trenton, NJ. *See* Hosie Dec., ¶ 4.

### 3. Cost of Attendance for Willing Witnesses.

The next factor considers the cost of the litigation to willing witnesses. The "convenience of party witnesses is given less weight" than the convenience of third-party witnesses, and as established in § IV.B.2, numerous relevant third-party witnesses reside in neither the transferee nor transferor districts. *See Implicit, LLC v. Palo Alto Networks, Inc.*, 2018 WL 1942411, at *5.

Further, it is impossible for the Court to judge the convenience of the N.D. Cal venue for Juniper's witnesses with any more certainty than speculation as Juniper failed to identify individual witnesses in its briefing. *Cf. ColorQuick, L.L.C. v. Vistaprint Ltd.*, No. 6:09-CV-323, 2010 WL 5136050, at *6 (E.D. Tex. July 22, 2010) ("Defendants' vague allusions to third-party witnesses are insufficient for this factor to weigh significantly in favor of transfer.")

Its argument through "vague allusion" is nothing more than unsupported attorney speculation.

### 4. Court Congestion Weighs Against Transfer.

Comparison of the venues' relative times to trial demonstrates that the Eastern District of Texas ("E.D. Tex") suffers far less court congestion than N.D. Cal. According to December 2018 Federal Court Management Statistics, the median time from filing to trial for civil cases in E.D. Tex is 19 months, and the time to trial in N.D. Cal is 29.2 months. *See* Ex. 48. "Because this factor is primarily concerned about speed to trial (as opposed to judges' workloads), this factor weighs against transfer." *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-JRG (RSP), 2017 WL 4155236, at *6 (E.D. Tex. Sept. 19, 2017).

### 5. "Local Interest" Factor is Neutral.

This district has "routinely rejected" suggestions that a "specific locality has a dominant interest in resolving the issue of [patent infringement]" when a "company sells allegedly infringing products, or offers allegedly infringing services, nationwide." *J2 Glob. Commc'ns, Inc. v. Protus IP Sols., Inc*., No. CIV.A. 6:08-CV-211, 2008 WL 5378010, at *6 (E.D. Tex. Dec. 23, 2008). Defendant has presented no facts to refute the nationwide impact of its infringement. Plaintiff therefore contends that this factor is inapplicable.

To the extent the Court considers this factor, Plaintiff's only offices are located in Austin and Tyler, and therefore Plaintiff's local interest is served by remaining in this district. *See Uniloc USA Inc. v. Box, Inc.,* No. 1:17-CV-754-LY, 2018 WL 2729202, at *4 (W.D. Tex. June 6, 2018) ("Uniloc is a Texas corporation, Box has an office in Texas, and Texas "has a significant interest in preventing patent infringement within its borders and in protecting the patent rights of its citizens."). Even assuming Juniper has a local interest in N.D. Cal, this factor should at most be neutral. *See id.* ("But both Texas and California have an interest in preventing patent infringement, and Texas and California also have an interest in preventing violations of the law by corporations headquartered within their borders. On balance, this factor is neutral.")

However, Juniper does not dispute that it has a significant presence in Plano (its only sales office in the state), and further engineering and sales offices in the Dallas and Austin areas. *See* Juniper Br. at 8 & Hosie Dec., ¶ 5. Consequently, both parties' local interests are best served in this district, and this factor weighs against transfer. *Cf. Realtime Adaptive Streaming LLC v. Amazon.com, Inc*., No. 6:17-CV-00549-JRG, 2018 WL 4444097, at *8 (E.D. Tex. Sept. 5, 2018) ("While Amazon asserts that [its local] facilities did not provide a local interest on the basis that they are related to national sales and do not use the asserted technology; nevertheless, Amazon affords itself of the laws and protections provided by this District.")

**6. All Federal District Courts are Equally Competent at Patent Law.**

This district has repeatedly held that the public factors relating to familiarity with the law and conflicts of law are neutral in most patent infringement cases. *See Realtime Data, LLC v. Hewlett Packard Enter. Co.*, No. 6:16-CV-00086-RWS(JDL), 2017 WL 3709095, at *9 (E.D. Tex. Feb. 3, 2017) ("With respect to the third and fourth factors, both courts are familiar with federal patent law and there are no conflicts of laws questions to avoid.") Additionally, Juniper's argued "conflicts of law" amount to repetitive reference to the judicial efficiency factor. *See* Juniper Br. at 15.

In any event, the case Defendant cites is inapposite. *Young v. Waldron* concerned "real property located in the Southern District of Texas" where plaintiffs had hoped to try their luck in the Eastern District after an unsuccessful ten years of litigation in the Southern District. *Young v. Waldron*, No. 1:15-CV-14, 2015 WL 13694664, at *1 (E.D. Tex. May 22, 2015). The instant case hardly reaches the extremity of *Young*, which carried the baggage of 17 federal court proceedings in the transferee venue. *Id.*

**V.    CONCLUSION.**

For the reasons set forth above, Implicit respectfully requests that this Court deny Juniper's Motion to Transfer Venue.

| | |
|---|---|
| **Dated May 23, 2019** | Respectfully submitted, |
| | */s/ Spencer Hosie*<br>William E. Davis, III<br>Texas State Bar No. 24047416<br>Christian J. Hurt<br>Texas State Bar No. 24059987<br>Edward Chin (Of Counsel)<br>Texas State Bar No. 50511688<br>Debra Coleman (Of Counsel)<br>Texas State Bar No. 24059595<br>**THE DAVIS FIRM, PC** |

>
> 213 N. Fredonia Street, Suite 230
> Longview, Texas 75601
> Telephone: (903) 230-9090
> Facsimile: (903) 230-9661
> bdavis@bdavisfirm.com
> churt@bdavisfirm.com
> echin@bdavisfirm.com
> dcoleman@bdavisfirm.com
>
> Spencer Hosie, *pro hac vice*,
> CA State Bar No. 101777
> Brandon C. Martin, *pro hac vice*,
> CA State Bar No. 269624
> Darrell Rae Atkinson, *pro hac vice,*
> CA State Bar No. 280564
> **HOSIE RICE LLP**
> 600 Montgomery St., 34th Floor
> San Francisco, CA 94111
> 415.247.6000
> Fax: 415.247.6001
> shosie@hosielaw.com
> bmartin@hosielaw.com
>
> *Counsel for Plaintiff Implicit, LLC*

### CERTIFICATE OF SERVICE

     The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this May 23, 2019, on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

> */s/ Spencer Hosie*
> Spencer Hosie